## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No.: 1:21-cv-00932-CKK |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

1

assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 240 FBI employees, supported by approximately 93 contractors, who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010) and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA. The Section Chief, RIDS has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1, respectively.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. §552a. Specifically, I am aware of the FBI's handling of Plaintiff's Freedom of Information Act

("FOIA") request for records pertaining to the FBI's knowledge and efforts surrounding a reported Chinese spy known as Christine Fang's, or Fang Fang's, lengthy relationship with Representative Eric Swalwell.

(4)     In response to Plaintiff's request, the FBI issued a Glomar[1] response whereby the FBI refused to confirm or deny the existence or non-existence of responsive records based on FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and/or (b)(7)(E).  This declaration is being submitted in support of Defendant's motion for summary judgment, and provides a summary of the administrative history of Plaintiff's request; and the FBI's reasoning for neither confirming nor denying the existence or non-existence of responsive records pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E).

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST

(5)     By letter dated December 16, 2020, Plaintiff submitted a FOIA request to the FBI, requesting records "pertaining to the FBI's knowledge and efforts surrounding news reporting that the Chinese spy known a Christine Fang, or Fang Fang, had a lengthy relationship with Representative Eric Swalwell.[2]  The timeframe for the records requested was January 1, 2011 through the date the request was processed (December 30. 2020).  **(Ex. A.)**

(6)     By letter dated December 30, 2020, the FBI acknowledged receipt of Plaintiff's FOIA request and notified Plaintiff their request had been assigned FOIA Request Number 11484080-000.   Additionally, the FBI denied this request by issuing a Glomar response.

---

[1] The phrase "Glomar" stems from a case in which a FOIA requester sought information concerning a ship named the "Hughes Glomar Explorer," and the CIA refused to confirm or deny its relationship with the Glomar vessel because to do so would compromise the national security or divulge intelligence sources and methods. *Phillipi v. CIA,* 655 F 2d. 1325 (D.C. Cir. 1981).
[2] Considering Plaintiff summarizes this request as seeking records relating to an alleged spy's association with Representative Eric Swalwell, the FBI reasonably interpreted Plaintiff's request as seeking FBI investigative records related to these implicated espionage activities.

Specifically, the FBI informed Plaintiff it could neither confirm nor deny the existence of the

requested records responsive to Plaintiff's request pursuant to FOIA Exemptions (b)(1), (b)(3),

(b)(6), (b)(7)(C) and (b)(7)(E) of 5 U.S.C. § 552.   The FBI is an intelligence agency as well as a

law enforcement agency.  In its capacity as an intelligence agency, the FBI compiles records

while carrying out its responsibilities to investigate threats to national security and gather foreign

intelligence.  The FBI advised Plaintiff that the nature of their request implicated records the FBI

may or may not compile pursuant to its national security and foreign intelligence functions.

Accordingly, the FBI could neither confirm nor deny the existence of any records about their

subject as the mere acknowledgment of such records existence or nonexistence would in and of

itself trigger harm to national security interests per Exemption (b)(1) and/or reveal intelligence

sources and methods per Exemption (b)(3); 50 U.S.C. § 3024(i)(1).   The FBI further advised

Plaintiff it would neither confirm nor deny the existence of such records pursuant to FOIA

exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C).  The mere

acknowledgement of the existence of FBI records on third party individuals could reasonably be

expected to constitute an unwarranted invasion of personal privacy.  Additionally, the FBI

advised Plaintiff FOIA Exemption (b)(7)(E) protects "records or information compiled for law

enforcement purposes when disclosure would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  How the FBI applies its investigative resources against a particular

allegation, report of criminal activity, or perceived threat is, itself a law enforcement technique

or procedure the FBI protects pursuant to Exemption (b)(7)(E) of 5 U.S.C. § 552.  The FBI

informed Plaintiff that they could appeal the FBI's response to the Department of Justice (DOJ),

4

Office of Information Policy (OIP) DOJ within ninety (90) days of its letter, as well as contact

the FBI's public liaison and/or seek dispute resolution services by contacting the Office of

Government Information Services (OGIS).   **(Ex. B.)**

(7)     By letter dated February 16, 2021, Plaintiff submitted an appeal to DOJ, OIP

challenging the FBI's December 30, 2020 Glomar assertion in regards to FOIPA Request No.

1484080-000. **(Ex. C.)**

(8)     On March 3, 2021, DOJ, OIP acknowledged receipt of Plaintiff's appeal and

informed them it was assigned OIP appeal number DOJ-AP-2021-01184. **(Ex. D.)**

(9)     On April 6, 2021, Plaintiff filed this instant action.

(10)     By letter dated May 18, 2021, OIP notified Plaintiff their FOIA appeal was being

administratively closed since the FOIA request became the subject of litigation. **(Ex. E.)**

### THE FBI's GLOMAR RESPONSE

(11)     The FBI relies on a Glomar response in instances in which, assuming that

responsive records existed, even acknowledging their existence would result in harm protected

against by one or more FOIA exemptions.  To be credible and effective, the FBI must use a

Glomar response in all similar cases regardless of whether responsive records actually exist,

including instances in which the FBI does not possess records responsive to a particular request.

If the FBI were to invoke a Glomar response only when it actually possessed responsive records,

the Glomar response would be interpreted as an admission that responsive records exist.

(12)     The FBI is a national security agency with dual intelligence and law enforcement

missions.  As with other intelligence agencies, the FBI's carries out its intelligence mission

covertly, which is necessary to maintain its effectiveness in protecting the national security of the

United States.  Thus, in some instances, the mere confirmation or denial of the existence or

nonexistence of records responsive to a FOIA request would itself reveal intelligence sources and methods and/or unknown law enforcement techniques and procedures. The FBI has determined that merely acknowledging the existence or non-existence of records responsive to Plaintiff's request would trigger harms under FOIA Exemptions (b)(1), (b)(3), and (b)(7)(E) as it would reveal unknown details concerning the FBI's potential application of intelligence sources, methods and activities. Moreover, it would potentially associate particular third party individuals, a purported Chinese spy known a Christine Fang, or Fang Fang, and Representative Swalwell with FBI law enforcement or intelligence activities causing a clearly unwarranted invasion of these individuals' personal privacy interests. As such, the FBI also cannot confirm or deny the existence of records to avoid harms protected against by FOIA Exemptions (b)(6) and (b)(7)(C).

(13) The FBI's determination that a Glomar response is necessary here flows from the particular subject matter of Plaintiff's request, which is specifically related to the collection and dissemination of intelligence information about particular individuals.

(14) The FBI's Glomar response here is justified because revealing the existence or non-existence of responsive records:

A.     is classified in the interest of national security, *see* 5 U.S.C. § 552(b)(1);

B.     would risk disclosure of information protected by statute, specifically the National Security Act of 1947, *see id.* § 552(b)(3);

C.     could reasonably be expected to reveal non-public information about the FBI's use of law enforcement techniques and procedures in a way that risks circumvention of the law, *see* 5 U.S.C. § 552(b)(7)(E); and

D.      would unwarrantedly invade the personal privacy interests of the third parties listed in the request.

(15)    The FBI has not made any official public disclosures confirming or denying whether or not it has collected intelligence information about third party subjects of Plaintiff's request, or whether or not it has disseminated such information.  Accordingly, the FBI must rely on a Glomar response to Plaintiff's request, based on Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E).

## FOIA EXEMPTION (b)(1)

(16)    Exemption (b)(1) protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Executive Order 13526 currently governs classification.  It provides for the protection of intelligence activities, sources, and methods.  *See* E.O. 13526, § 1.4(c).

(17)    As previously explained, Plaintiff seeks records related to the FBI's knowledge and efforts surrounding news reports that the Chinese spy known a Christine Fang, or Fang Fang, had a lengthy relationship with Representative Eric Swalwell.  As an original classification authority, I have determined the existence or non-existence of records relevant to a potential investigation of alleged espionage activities involving third party subjects, by their nature, would concern intelligence sources and methods; and their existence/nonexistence is a classified fact under E.O. 13526 and protected from disclosure.  Thus, the FBI cannot confirm or deny the existence of records without risking the revelation of a classified fact.

(18)    E.O. 13526, which currently governs the classification of national security information, establishes four requirements for classification: (1) an original classification

authority classifies the information; (2) the U.S. Government owns, produces, or controls the information; (3) the information is within one of eight protected categories listed in section 1.4 of the Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and identifies or describes that damage.  Exec. Order No. 13526, § 1.1(a), 75 Fed. Reg. 707, 707 (Dec. 29, 2009).

(19)    The categories of information listed in section 1.4 include information that "pertains to . . . intelligence activities" or "intelligence sources or methods." *Id.* § 1.4(c).

(20)    E.O. 13526 further provides that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." *Id.* § 3.6(a).

(21)    As stated *supra,* I have determined the existence or nonexistence of records responsive to Plaintiff's FOIA request is classified; acknowledging whether or not records exist would tend to confirm or disprove the FBI's responsibilities and capabilities in investigating threats to national security and foreign intelligence functions and intelligence gathering methods regarding information against particular individuals during a specified period of time.

(22)    Any records responsive to Plaintiff's request would necessarily be held by the FBI, and would therefore be "under the control of the United States Government." *Id.* § 1.1(a)(2).

(23)    The existence or nonexistence of such records "pertains to . . . intelligence activities" or "intelligence sources or methods." *Id.* § 1.4(c).  An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest, and includes any

8

procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method, and information generated by it, is needed by United States Intelligence/Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the use or non-use of the activity or method, including intelligence sources, if the viability, productivity, and usefulness of the activity, method, and source are to be preserved.

(24)     Intelligence activities, methods, and sources must be protected from disclosure in every situation in which a certain intelligence capability, technique, or interest—or its specific use—is unknown to the groups against which it is deployed, since those groups could take countermeasures to nullify its effectiveness. Intelligence activities, methods, and sources are valuable only so long as they and/or their use under particular circumstances or against particular targets remains unknown and unsuspected. Once the fact of an intelligence activity, method, or source's use or non-use in a certain situation or against a certain target is discovered, its continued successful use is seriously jeopardized.

(25)     The U.S. Government must do more than prevent explicit references to an intelligence activity, method, or source; it must also prevent indirect references to them. One vehicle for gathering information about the U.S. Government's capabilities is by reviewing officially-released information. We know that terrorist organizations and other hostile or Foreign Intelligence groups have the capacity and ability to gather information from myriad sources, analyze it, and deduce means and methods from disparate details to defeat the U.S. Government's collection efforts. Thus, even seemingly innocuous, indirect references to an

intelligence activity, source, or method could have significant adverse effects when juxtaposed with other publicly-available data.

(26)     Here, acknowledging the existence or non-existence of records responsive to Plaintiff's request could tend to confirm or refute the FBI's use of intelligence methods for gathering intelligence data on a particular intelligence activity or method against particular individuals during a specific period of time.  Such an acknowledgement could suggest non-public information regarding the nature of the FBI's intelligence interests, priorities, activities, and methods—information that is desired by adversaries who seek to thwart the FBI's intelligence-gathering mission.  Admitting the existence of records immediately confirms to an alleged spy and possible hostile foreign intelligence services the ability of FBI intelligence sources and methods to detect and thwart foreign intelligence operations targeted against United States politicians; and the FBI's priorities and targeting methodology relevant to reports of such alleged espionage activities.  Revealing this information would not only allow the possible target in this instance to immediately deploy countermeasures to thwart the FBI's intelligence source and methods, it would also allow the United States' foreign adversaries to predict and circumvent the FBI's application of these sources and methods in future similar circumstances. As such, confirming the existence of records would reduce the effectiveness of intelligence sources and methods and cause harm to national security.

(27)     Conversely, revealing the FBI does not possess records on this subject could confirm to an alleged spy the FBI's inability to detect or prevent their espionage activities.  This would reveal gaps in gathered intelligence and key information about the limitations of FBI intelligence sources and methods used to uncover hostile activities, allowing for further exploitation of these vulnerabilities.  Moreover, it would confirm to a potential espionage target

the tradecraft they utilized was effective and allow them and hostile foreign intelligence services to judge how they might continue to employ such techniques to continue to gather intelligence against and undermine the national security of the United States.  As such, denying the existence of records would also cause harm to national security.

(28)     The determination that the existence or nonexistence of the requested records is classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.[3]

## FOIA EXEMPTION (b)(3)

(29)     Exemption (b)(3) protects information "specifically exempted from disclosure by statute" where the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(B).  Here, the statute on which the FBI relies is the National Security Act of 1947, as amended, which provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).

(30)     As relevant to the FBI's assertion of Exemption (b)(3), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.  On its face, this federal statute leaves no discretion to agencies about withholding from the public

---

[3] To the extent possible on the public record, I have explained the harm to the national security that would result from confirming or denying the existence or nonexistence of responsive records here.  If the Court finds that explanation inadequate, the FBI could offer further explanation *ex parte* and *in camera.*

information about intelligence sources and methods.  Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute.

(31)    In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(1).  The FBI is one of the member agencies comprising the IC, and as such must protect intelligence sources and methods.

(32)    Disclosure of intelligence source and method information presents the potential for adversaries to develop and implement countermeasures, which would result in the loss of critical intelligence information relied upon by national policymakers and the IC.

(33)    As described above, acknowledging the existence or non-existence of records responsive to Plaintiff's request would provide information about how the FBI investigates threats to national security and its foreign intelligence functions.  The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of potential foreign intelligence source penetration of a specific target during a specific period of time.   Thus, the requested information, if it existed, would pertain to "intelligence sources and methods," and must therefore be "protect[ed] . . . from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).

(34)     Accordingly, the National Security Act, in conjunction with Exemption (b)(3),

provides an additional and independent basis for the FBI's Glomar response to Plaintiff's

request.

### *Exemption (b)(7) Threshold*

(35)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency.

(36)     Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by

the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"), and 28 C.F.R.

§ 0.85, the FBI is the primary investigative agency of the federal government, with authority and

responsibility to investigate all violations of federal law not exclusively assigned to another

agency; to conduct investigations and activities to protect the United States and its people from

terrorism and threats to national security; and to further the foreign intelligence objectives of the

United States.

(37)     Plaintiff's request stated that it sought "records pertaining to the FBI's knowledge

and efforts surrounding" the alleged relationship between a reported Chinese spy and

Representative Swalwell that was allegedly part of a foreign intelligence operation. Responsive

FBI records, if any exist, about the FBI's knowledge and efforts regarding that alleged foreign

intelligence operation would be records compiled for purposes of the FBI's law enforcement

duties.

## FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)

(38)     Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption (b)(6).

(39)     Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

(40)     The FBI asserts Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

(41)     Pursuant to long-standing policy, the FBI will not confirm or deny the existence of law enforcement records about a third party in the absence of a privacy waiver or proof of death, unless the requester establishes a public interest in disclosure that outweighs the third party's privacy interests.  The FBI instituted this policy in order to protect the privacy rights of individuals, particularly those who appear in FBI law enforcement files.  It is well-recognized that individuals have substantial privacy interests in relation to being associated with law enforcement investigations because any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing; and can, in some circumstances, result in

physical harm or threats of harm or death. Statements by an individual alluding to or acknowledging an association with a law enforcement investigation do not extinguish his privacy interests or constitute a waiver of privacy interests.

(42)    If a requester establishes a public interest, then the FBI will balance that public interest against the third party's privacy interests. This balancing is done on a case-by-case basis. The FBI will process a request for, and release non-exempt law enforcement records about, a third party only if it determines that the public interest outweighs the individual's privacy interests after conducting the balancing analysis. The balancing analysis in each case is necessarily fact-specific. Thus, each request must be treated individually, and the FBI must retain flexibility in the way in which it handles each request.

(43)    Here, Plaintiff has not submitted privacy waivers from anyone and to the FBI's knowledge, neither of the subjects of Plaintiff's FOIPA request is deceased. Moreover, Plaintiff failed to establish a public interest sufficient to override these individuals' privacy interests and warrant the non-consensual disclosure of records – if they exist – about them.

(44)    For purposes of Exemptions (b)(6) and (b)(7)(C), a public interest exists when disclosure of information about an individual would significantly increase the public's understanding of FBI operations and activities. The balancing of interests under Exemptions (b)(6) and (b)(7)(C) also considers the privacy interests of the individuals implicated in a FOIA request. Here, Plaintiff is seeking records that, if they exist, would publicly connect these individuals to sensitive law enforcement, national security, and foreign intelligence operations of the FBI. Public disclosure could reasonably be expected to draw negative and unwanted attention to these individuals, could result in them receiving harassing inquiries, and otherwise

stigmatize and adversely affect them.  Accordingly, the FBI concluded that they maintain substantial privacy interests here.

(45)    Balanced against these substantial privacy interests, Plaintiff only provides unproven claims of an FBI investigative interest, and no real description of how providing public access to records (if they exist), would expand public knowledge of FBI activities, beyond those related to a very narrow incident involving alleged espionage activities directed at a United States Congressman.  Additionally, the fact that United States' foreign adversaries direct espionage efforts against lawmakers does not seem to be groundbreaking, or even surprising, considering lawmakers typically have ready access to classified or sensitive government information and would seemingly be prime targets of espionage activities.  Therefore, any additional public understanding to be gained through release of records responsive to Plaintiff's request is not sufficient to override the very significant privacy interests of the individuals listed in Plaintiff's request.

(46)    Finally, Plaintiff provides no evidence the FBI ever official disclosed whether or not it has ever had investigative interest in these matters.  News reports provided by Plaintiff are based on public news sources and do not constitute evidence of actual FBI investigative interest, nor does this constitute public acknowledgement by the FBI.   The publicly available information Plaintiff provides alleges ties between suspected Chinese intelligence operative Christine Fang to U.S. congressional representative Eric Swalwell, but provides no proof of investigative interest in these subjects on the part of the FBI was ever disclosed under circumstances in which an authoritative government official allowed the specific information to be made public.

(47)    In sum, Plaintiff's claimed public interest is largely speculative.  In contrast, the individuals listed in their request have very tangible and significant privacy interests in the FBI

16

neither confirming nor denying whether responsive records about them exist. Accordingly, the FBI concluded that Plaintiff had not established a public interest sufficient to warrant intruding on these individuals' privacy interests by acknowledging whether or not responsive records exist.

## EXEMPTION (b)(7)(E)

(48)     FOIA Exemption (b)(7)(E) protects "records or information compiled for law enforcement purposes [when disclosure] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7)(E). This exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

(49)     How the FBI applies its investigative resources (or not) against a particular allegation, report of criminal activity, or perceived threat – to include when and against whom the FBI seeks to target for investigations, is itself a law enforcement technique or procedure that the FBI protects pursuant to Exemption (b)(7)(E).

(50)     As previously demonstrated, acknowledging or denying the existence or non-existence of the law enforcement records Plaintiff seeks would be tantamount to confirming or denying whether or not the FBI investigated certain individuals based on unproven allegations of espionage. Even in acknowledged investigations, the FBI does not routinely disclose whether or not it is or is not investigating a particular individual, nor does it routinely disclose how and when received intelligence is deemed actionable. Indeed, the very concept of investigations is that they are conducted covertly. Acknowledging how, when and under what circumstances the

17

FBI relies upon authorized law enforcement techniques, procedures and guidelines for investigative activities would create opportunities for individuals and adversaries to then be able alter their behavior to avoid attention by law enforcement, making it more difficult for the FBI to be proactive in assessing and investigating national security threats.  Therefore, the FBI can neither confirm nor deny the existence of records responsive to Plaintiff's request without causing harms protected against by FOIA Exemption (b)(7)(E).

## **CONCLUSION**

(51)    In reviewing Plaintiff's request, the FBI determined it could neither confirm nor deny whether it possesses records responsive to Plaintiff's request, pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) because merely confirming or denying the existence of such records would reveal classified information and intelligence source and method information prohibited from disclosure by statute; could reasonably be expected to invade third parties' privacy interests; and/or would reveal non-public information about sensitive law enforcement techniques or procedures.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through F attached hereto are true and correct copies.

Executed this 17th day of September 2021.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia