**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case Action No. 21-cv-932-CKK |
| FEDERAL BUREAU OF INVESTIGATIONS, | ) **)** | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS CROSS MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. # 18]**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 1

ARGUMENT ............................................................................................................................... 3

    I.    The FOIA and the FBI's Mistaken Expansion of Exemptions (b)(1) and (b)(3). ............... 5

    II.   FOIA Privacy Interests and the FBI's Mistaken Reliance on (b)(6) and (b)(7)(c) .............. 8

    III.   The FOIA and the FBI's Mistaken Reliance on (b)(7)(E) ............................................... 13

CONCLUSION ......................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*ACLJ. v. NSA,*
  474 F. Supp. 3d 109 (D.D.C. 2020) ....................................................................... 5-6

*ACLU v. U.S. Dep't of Def.,*
  339 F. Supp. 2d 501 (S.D.N.Y. 2004) ..................................................................... 3

*ACLU v. U.S. Dep't of Def.,*
  628 F.3d 612, 619 (D.C. Cir. 2011) ............................................................... *passim*

*Brayton v. Office of the U.S. Trade Rep.,*
  641 F.3d 521, 527 (D.C. Cir. 2011) ........................................................................ 1

*Darui v. U.S. Dep't of State,*
  798 F. Supp. 2d 32 (D.D.C. 2011) .......................................................................... 5

*DOJ v. Julian,*
  486 U.S. 1 (1988) ................................................................................................... 2

*Fitzgibbon v. CIA,*
  911 F.2d 755 (D.C. Cir. 1990) ................................................................................ 6

*Gardels v. CIA,*
  689 F.2d 1100 (D.C. Cir. 1982) .............................................................................. 2

*Graff v. FBI,*
  822 F. Supp. 2d 23 (D.D.C. 2011) .......................................................................... 9

*Judicial Watch, Inc. v. DOJ,*
  20 F. Supp. 3d 260 (D.D.C. 2014) ..................................................................... 1, 2

*Judicial Watch, Inc. v. U.S. Secret Serv.,*
  726 F.3d 208 (D.C. Cir. 2013) ................................................................................ 2

*Judicial Watch, Inc. v. United States Dep't of Homeland Sec.,*
  514 F. Supp. 2d 7 (D.D.C. 2007) ............................................................................ 9

*Kele v. DOJ,*
  No. 87-0534 TFH/PJA, 1987 U.S. Dist. LEXIS 16961, at *11 (D.D.C. Dec. 7, 1987) ............ 9

*Kimberlin v. DOJ,*
  139 F.3d 944 (D.C. Cir. 1998) ........................................................................ 10, 11

*Lesar v. DOJ*,
    636 F.2d 472 (D.C. Cir. 1980) ................................................................. 3, 8

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996) ......................................................... 3, 7, 8, 12

*Nation Magazine, Washington Bureau v. U.S. Customs Serv.*,
    71 F.3d 885, 890 (D.C. Cir. 1995) ............................................................ 4

*Oglesby v. U.S. Dep't of the Army*,
    920 F.2d 57 (D.C. Cir. 1990) .................................................................... 1

*PETA v. Nat'l Institutes of Health, Dep't of Health & Human Servs.*,
    745 F.3d 535 (D.C. Cir. 2014) .................................................................. 4

*Phillippi v. CIA*,
    655 F.2d 1325 (D.C. Cir. 1981) ................................................................ 2

*Schaerr v. DOJ*,
    2020 U.S. Dist. LEXIS 13772 (D.D.C. Jan. 28, 2020) .................... passim

*Shaw v. U.S. Dep't of State*,
    559 F. Supp. 1053 (D.D.C.) ...................................................................... 9

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) .................................................................. 2

**FEDERAL STATUTES**

5 U.S.C. § 552 ............................................................................... 8, 9, 10

**OTHER AUTHORITIES**

111 Cong. Rec. 26821 (1965) .................................................................... 1

John Breshnahan, Rep. Swalwell Says Trump Criticism Behind Spy Story, Politico (Aug. 12,
    2020), https://www.politico.com/news/2020/12/08/swalwell-trump-criticism-spy-story-
    443845 ................................................................................................... 10

Bethany Allen & Zach Dorfman, Exclusive Suspected Chinese Spy Targeted California
    Politicians, Axios (DEC. 8, 2020), https://www.axios.com/china-spy-california-politicians-
    9d2dfb99-f839-4e00-8bd8-59dec0daf589.html. ................................... 10

## INTRODUCTION

In introducing the predecessor of the bill that was enacted as the federal Freedom of Information Act ("FOIA"), its sponsor, Senator Edward Long, clearly identified the principle necessitating such a law: "Knowledge will forever govern ignorance, and a people who mean to be their own governors must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it is but a prolog to a farce or a tragedy or perhaps both." 111 Cong. Rec. 26821 (1965) (quoting James Madison). The Defendant Federal Bureau of Investigations (FBI) has failed to meet its obligations under FOIA to produce all responsive material to the Plaintiff, American Center for Law and Justice (ACLJ). The FBI unreasonably interpreted the ACLJ's FOIA requests and has failed to meet its obligations under FOIA to prove that the FOIA Exemptions it asserted in support of its *Glomar* response apply to all the records sought by the ACLJ.

## LEGAL STANDARD

Many FOIA cases are resolved on summary judgment. *Judicial Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 267 (D.D.C. 2014) (hereinafter "*Judicial Watch I*") (quoting *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). At the summary judgment stage, the agency has the burden of showing that it has fully complied with the FOIA. In response to a challenge to the adequacy of its search for requested records, the agency must provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Further, "[w]hen an agency's response to a FOIA request is to withhold responsive records, either in whole or in part, the agency 'bears the burden of proving the applicability of claimed

1

exemptions.'" *Judicial Watch I*, 20 F. Supp. 3d 267 (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)). The government may sustain its burden through the submission of declarations detailing, with specificity, the reason that a FOIA exemption applies, along with an index, as necessary, describing the materials withheld. *Id.* (citations omitted). *See also Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (A grant of summary judgment based on agency affidavits is appropriate only "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.") (Internal citations and quotations omitted). In resolving a summary judgment motion in a FOIA case, however, a court must interpret the statute broadly in favor of public disclosure and construe any exemptions narrowly. *DOJ v. Julian*, 486 U.S. 1, 8 (1988).

Under FOIA and in some circumstances, "an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). This is known as a "*Glomar* response" (a term that comes from the case *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)), and is proper if the existence of an agency record is itself exempt from disclosure. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "To justify a *Glomar* response, the agency must supply the court with a detailed affidavit that explains why it cannot provide a substantive response pursuant to a FOIA exemption." *Schaerr v. DOJ*, 2020 U.S. Dist. LEXIS 13772, at 14 (D.D.C. Jan. 28, 2020).

A FOIA requestor may compel disclosure of information, and overcome a *Glomar* response, however, where either an official acknowledgment as to the existence of the documents has been made, *or by a sufficient showing that the agency did not evaluate the request in good*

*faith. Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *Schaerr v. DOJ*, 2020 U.S. Dist. LEXIS 13772, at 17; *ACLU*, 628 F.3d at 620.

When there are documents, "the existence of which the government contends it may be unable to confirm or deny, procedures can be established to identify such documents *in camera* or to a special master with proper clearance." *ACLU v. U.S. Dep't of Def.*, 339 F. Supp. 2d 501, 540 (S.D.N.Y. 2004).

"The standard that the district court must apply in making its de novo review of the agency's classification decision, then, is whether unauthorized disclosure of the materials reasonably could be expected to cause the requisite harm." *Lesar v. DOJ*, 636 F.2d 472, 481 (D.C. Cir. 1980). "The agency may satisfy this standard by submitting affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption." *Id*.

## ARGUMENT

The ACLJ takes no issue with the caselaw and legal principles outlined by the FBI in its Motion and Memorandum. The problem here for the FBI is that it asks the Court and Plaintiff to assume and take the FBI's word for it that the entirety of Plaintiff's FOIA requests automatically trigger the *Glomar* jurisprudential analysis. But it does not. In jumping straight into the *Glomar* analysis, the FBI glazes over the critical threshold issue of whether all responsive records even merit the special protections afforded by the *Glomar* in the first place.

This flaw is illustrated nicely by the carefully devised declaration that: "The FBI 'has not made any official public disclosures confirming or denying whether or not it has collected intelligence information concerning or otherwise investigated the activities of the third party

subjects of Plaintiff's request, or whether or not it has disseminated such information.'" Def. MSJ, 23/29 (quoting Seidel Decl. ¶ 15).

Another clue to the FBI's approach is found here: "As an initial matter, the FBI acted reasonably in interpreting the request as one for investigative records relating to the allegations of an intelligence operation involving Christine Fang and Eric Swalwell." Def. MSJ, Dkt # 18-1, 13 (citing Seidel Decl. ¶ 5). Though it appears small, and easy to gloss over, this is a critical key. Like Jenga, the FBI's whole argument in support of its Motion crumbles if this foundational assumption is extracted. This misinterpretation also violates a clear principle of the FOIA that "[a]gencies have 'a duty to construe a FOIA request liberally,'" *PETA v. Nat'l Institutes of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), and not in a manner that results in as little disclosure as possible – or as here, zero disclosure.

Plaintiff's FOIA requests clearly sought records outside of that carefully devised interpretational statement.  It is difficult to imagine that there are *not* communications among FBI officials about the subject of the news stories *that are not the collection of intelligence information or an investigation*. This is especially so since *the ODNI, NSA, and the State Department have admitted such records exist* in a substantively identical FOIA request. *See ACLJ v. ODNI, NSA, and State Dept.*, 21-cv-333 (D.D.C.).

The FBI has not argued, nor could it, and has given no legal authority for the concept, that every record that pertains to, or where the word "Swalwell" or "Fang Fang" are included, is automatically "intelligence information" of the type for which the special *Glomar* response is

reserved. The FBI's position here is so expansive it stretches the critical *Glomar* response tool so far that it actually devalues it. If everything is *Glomar*, then nothing is.[1]

## I.    THE FOIA AND THE FBI'S MISTAKEN EXPANSION OF EXEMPTIONS (B)(1) AND (B)(3).

As to the assertions of Exemptions 1 and 3, the FBI's simplistic statement lacks sufficient specificity to demonstrate that disclosing the existence or nonexistence of any records "reasonably could be expected to cause the requisite harm." The FBI's general, conclusory, and unsupported assertion of national security interests to all responsive records lacks the "logical fit" with national security concerns necessary to justify application of Exemption 1 and 3.

The FBI could cure this deficiency with a sufficiently specific affidavit providing a meaningful application of the broad assertions to the specific requests and specific types of records implicated in the ACLJ's Request.

The lack of a logical fit is evidenced by the undisputed fact that the ODNI, the statutory head of U.S. Intelligence Community, the NSA, which is also a key member of the Intelligence Community, and the State Department, which also has a bureau which is part of the Intelligence Community, *all did not issue a Glomar response* in response to substantively the same FOIA requests. ACLJ's SOF #13; *see also* ACLJ's SOF # 9-12. The ODNI declination to assert a *Glomar* response across the board is especially weighty given the weight afforded to its determinations as head of the Intelligence Community. *See ACLJ. v. NSA*, 474 F. Supp. 3d 109, 123 n.10 (D.D.C.

---

[1] Even the caselaw relied upon by the FBI illustrates this flaw, as these cases deal with *Glomar* being applied to *specific* documents, and not in a super-broad, wholesale, untestable conclusory assertion like FBI did in this case. *See, e.g., Darui v. U.S. Dep't of State*, 798 F. Supp. 2d 32, 43 (D.D.C. 2011) (holding that there had not been public acknowledgement *of the contents of two documents* that had been filed under seal in a criminal case); *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 621 (D.C. Cir. 2011) (addressing according to the agency "the substantial weight it is due regarding the details of the classified status of the disputed record" – *a singular record*).

2020) (finding that the ODNI was, for FOIA purposes, a "'parent'. . . across all subordinate intelligence units," including the State Department's Bureau of Intelligence and Research); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) ("[I]n the arena of intelligence and foreign relations," a statement made by "one in a position to know" is given unique meaning and weight.").[2]

The FBI is fully capable of redacting, or even withholding in full, records identifying classified information and the like – just as it has done in other FOIA cases involving ACLJ requests – and just as the ODNI, NSA, and State Department are in the process of doing in their individualized assessments of responsive records in the *ACLJ v. NSA*, 21-cv-333 (D.D.C.) matter. Emails between FBI officials about the topic of a heavily reported news story are not automatically and wholesale classified or protected from disclosure by the National Security Act and hence FOIA Exemption 3. The FBI does not even overtly contend that they are. Instead, the FBI glosses over its underlying assumption that they are by its self-serving declaration that "the FBI acted reasonably in interpreting the request as one for investigative records relating to the allegations of an intelligence operation involving Christine Fang and Eric Swalwell." Def. MSJ, Dkt # 18-1, 13 (citing Seidel Decl. ¶ 5). This sweeping and illogical declaration grossly overgeneralizes the scope of the ACLJ's FOIA requests and should be rejected.  If the FBI's position is allowed to stand, then every time an FBI official emails about the subject of any news story involving an investigation, then even *the existence or nonexistence* of that email may barred from the public

---

[2] To be clear, the ACLJ does not contend here that the FBI lacks the authority to make the relevant determination. Instead, the ACLJ contends that when testing agency affidavits in the national security or intelligence realms, which are essentially impossible for FOIA requestors to overcome, the fact that the ODNI (and the NSA and State Department) did *not* determine that the extreme remedy of a *Glomar* response was needed to protect classified information, comply with the National Security Act, or protect intelligence information or national security information (or privacy interests), should weigh heavily in this Court's balancing of the interests.

under *Glomar*. That is an exception swallowing the rule, and flies in the face of the policy of FOIA favoring disclosure and applying the exemptions as narrowly as possible.

The ACLJ's Request #1 requested as follows: "All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by James Comey, Andrew McCabe, Christopher Wray, Robert Mueller, or any Deputy Director of the FBI, including by utilizing any alias, referencing, connected to, or regarding in any way Christine Fang (or Fang Fang, or Fang) or Rep. Eric Swalwell."  ACLJ SOF #18.

The ACLJ's Request #2 requested as follows: "All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any FBI official, agent or employee, referencing, connected to, or regarding in any way Christine Fang (or Fang Fang, or Fang) or Rep. Eric Swalwell." ACLJ SOF #19.

Importantly, the FBI did not and has not challenged these requests as overbroad, vague, or unduly burdensome. ACLJ SOF #20.

Just because the Background section of the ACLJ's FOIA request describes the *Axios* piece as the catalyst for these two FOIA requests, the FOIA requests themselves are not limited to the reported facts of that story. The ACLJ purposefully worded the FOIA requests to seek records beyond the scope of the facts reported in the *Axios* story about Rep. Swalwell and Christine Fang. That is why the disjunctive "or" was used. ACLJ SOF #21.

A FOIA requestor may compel disclosure of information, and overcome a *Glomar* response by a sufficient showing that the agency did not evaluate the request in good faith. *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *Schaerr v. DOJ*, 2020 U.S. Dist. LEXIS 13772, at 17; *ACLU*, 628 F.3d at 620. It is preposterous to conclude that every single record identified in these requests merits the extreme *Glomar* response. The ACLJ could concede, hypothetically, that *some*

7

requested records might merit a lawfully applied *Glomar* response. But not all. For example, the two parts of the Request list the subject matter of Fang Fang **or** Rep. Swalwell in the disjunctive, using "**or**." It is impossible to accept that there is not an FBI record that references or regards Rep. Eric Swalwell that does not merit a categorical *Glomar* response based on Exemption 1 or 3. The FBI's response prevents any meaningful analysis of whether, or to what extent, the laws cited indeed support the *Glomar* response as to any particular record. Instead, it indicates that the FBI simply decided that it did not want to search for responsive records that do not merit a *Glomar* response. This violates the letter and spirit of the FOIA, and demonstrated the lack of good faith that defeats a lazy or sloppy *Glomar* response.

The FBI must sufficiently show in its affidavit that all the records responsive to the ACLJ's requests "logically fall" within the exemption. *Lesar v. DOJ*, 636 F.2d 472, 481 (D.C. Cir. 1980). It has not, and cannot, do so. And, its overgeneralized assertion of *Glomar*, even when records logically exist that are not classified or subject to the National Security Act, and even when the head intelligence agency the ODNI, as well as the NSA and the State Department, did not assert *Glomar*, show the FBI "did not evaluate the request in good faith." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *Schaerr v. DOJ*, 2020 U.S. Dist. LEXIS 13772, at 17; *ACLU*, 628 F.3d at 620. Further evidence of the FBI's failure to evaluate the request in good faith is its refusal to timely decide the ACLJ's administrative appeal of the broad *Glomar* response within the time limit imposed by the Statute. ACLJ SOF #2; FBI SOF #5.

## II.   FOIA PRIVACY INTERESTS AND THE FBI'S MISTAKEN RELIANCE ON (B)(6) AND (B)(7)(C)

To justify its refusal to admit or deny the existence of responsive records, the FBI asserts that Christine Fang enjoys a privacy interest under 5 U.S.C. § 552(b)(7)(c). FBI SOF #12. Beyond the shock of the FBI denying U.S. citizens records under FOIA because of a Chinese spy's

purported privacy interests, the cases in this District cited for the proposition that foreign nationals enjoy the same privacy rights as Americans, *see Graff v. FBI*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011); *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 9 n.4 (D.D.C. 2007); *Kele v. DOJ*, No. 87-0534 TFH/PJA, 1987 U.S. Dist. LEXIS 16961, at *11 (D.D.C. Dec. 7, 1987); all cite back to a 1983 case that applied the (b)(6) "personnel and medical files and similar files" exemption. *Shaw v. U.S. Dep't of State*, 559 F. Supp. 1053, 1067 (D.D.C.). That is *not* a generalized privacy section and it is substantively different in scope than the (7)(c) privacy exemption. It pertains only to personnel and medical files, and similar files. The overgeneralized assertion that foreign nationals enjoy the same privacy interests as Americans is not dispositive and the cases cited overlook the distinguishing nuance.

Regardless, the FBI does not assert a statement of fact supporting the FBI's assertion of (b)(6) privacy interests. *See* FBI SOF #12. Instead, it merely argues in its brief in conclusory fashion that (b)(6) privacy applies.  But it is undisputable that (b)(6) only applies, on its face, to "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Plaintiff does not seek production of records of personnel and medical files and similar files of Rep. Swalwell or Christine Fang. ACLJ SOF #16.

Further, as to the FBI's reliance on (7)(c), Plaintiff does not seek production of records compiled for law enforcement purposes identifying Rep. Swalwell or Christine Fang.  ACLJ SOF #17.

To the extent the FBI's privacy based exemption claims are legitimate, the public interest favoring release here is strong. Christine Fang is a Chinese National and has been identified as a "Chinese intelligence operative." Pl.'s SOF, #13.  Rep. Eric Swalwell is a member of the House's

9

Permanent Select Committee on Intelligence.  ACLJ's SOF, #14.  There is an obvious public interest in FBI records about a Chinese national intelligence operative engaged in spying and maintaining a relationship with a U.S. Representative who sits on the House's Intelligence Committee. ACLJ's SOF, #15. But, again, the ACLJ requested records outside of the confines of the (b)(6) personnel and medical files and (b)(7) law enforcement files exemptions.

Rep. Swalwell himself has publicly admitted the underlying facts of the story:  "What it appears though that this person — as the story reports — was unsuccessful in whatever they were trying to do," Swalwell told Politico.[3] "As the story referenced, this goes back to the beginning of the last decade, and it's something that congressional leadership knew about it," Swalwell said. *Id.* Swalwell issued a statement to Axios, the media entity that broke the story: "A statement from Swalwell's office provided to Axios said: 'Rep. Swalwell, long ago, provided information about this person — whom he met more than eight years ago, and whom he hasn't seen in nearly six years — to the FBI. To protect information that might be classified, he will not participate in your story.'"[4]

As such, while Rep. Swalwell may have a degree of privacy interest relevant here, it is diminished in at least two regards: (1) he is a government official, *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) ("And although government officials, as we have stated before, may have a 'somewhat diminished' privacy interest, they 'do not surrender all rights to personal privacy when they accept a public appointment.'") (citation and internal quotations omitted); and, (2) he admitted the underlying facts to the press. *Id.* (government official's "statement to the press

---

[3] John Breshnahan, *Rep. Swalwell Says Trump Criticism Behind Spy Story*, Politico (Aug. 12, 2020), https://www.politico.com/news/2020/12/08/swalwell-trump-criticism-spy-story-443845.
[4] Bethany Allen & Zach Dorfman, *Exclusive Suspected Chinese Spy Targeted California Politicians*, Axios (DEC. 8, 2020), https://www.axios.com/china-spy-california-politicians-9d2dfb99-f839-4e00-8bd8-59dec0daf589.html.

undoubtedly does diminish his interest in privacy: the public already knows who he is, what he was accused of"). In *Kimberlin*, after being sued, the agency conceded that the relevant person's admission to the press that he was the subject of an investigation merited the withdrawal of its *Glomar* response. *Id.* at 947. The same should apply here. But, at the very least, these facts diminish the weight of Rep. Swalwell's privacy interests which, when weighed against the strong public interests in at least a limited disclosure of records that bear his name

Again, the ACLJ emphasizes what its requests did and did not seek. The ACLJ's Request #1 requested as follows: "All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by James Comey, Andrew McCabe, Christopher Wray, Robert Mueller, or any Deputy Director of the FBI, including by utilizing any alias, referencing, connected to, or regarding in any way Christine Fang (or Fang Fang, or Fang) or Rep. Eric Swalwell."  ACLJ SOF #18. The ACLJ's Request #2 requested as follows: "All records, communications or briefings created, generated, forwarded, transmitted, sent, shared, saved, received, or reviewed by any FBI official, agent or employee, referencing, connected to, or regarding in any way Christine Fang (or Fang Fang, or Fang) or Rep. Eric Swalwell." ACLJ SOF #19.[5]

The clear terms of both requests encompass records beyond personnel or medical files, or records compiled for law enforcement purposes.[6] If the FBI's position and actions in this case

---

[5] The FBI did not and has not challenged these requests as overbroad, vague, or unduly burdensome. ACLJ SOF #20.

[6] If the FBI had done as other agencies do (and, in fact, the ODNI, NSA, and State Department have done in responding to an essentially identical FOIA request from the ACLJ after the ACLJ filed suit against them, ACLJ SOF #12) and contacted the ACLJ and engaged in good faith narrowing discussions upon receipt of this FOIA request, or upon evaluation of the ACLJ's administrative appeal, this obvious fact could have been addressed without the need for Court intervention to this degree.

prevail, every FBI file is a personnel or medical file, or a law enforcement file – and so much so that the FBI does not even have to admit whether any record exists. Add on the sweeping (b)(1) and (b)(3) National Security Act exemptions claimed by the FBI, addressed *supra*, and the FOIA basically no longer applies to the FBI. The absurdity is highlighted by the fact, again, that the ODNI, NSA, and State Department all processed substantively identical FOIA requests from the ACLJ in the normal course, just as the FOIA contemplates.

A FOIA requestor may compel disclosure of information, and overcome a *Glomar* response by a sufficient showing that the agency did not evaluate the request in good faith. *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *Schaerr v. DOJ*, 2020 U.S. Dist. LEXIS 13772, at 17; *ACLU*, 628 F.3d at 620. It is preposterous to conclude that every single record identified in these requests merits the extreme *Glomar* response. The ACLJ could concede, hypothetically, that *some* requested records might merit a lawfully applied *Glomar* response. But not all. For example, the two parts of the Request list the subject matter of Christine Fang **or** Rep. Swalwell in the disjunctive, using "**or**." It is impossible to accept that there is not a reasonably searchable and processible FBI record that references or regards Rep. Eric Swalwell or Christine Fang that does not merit a categorical *Glomar* response based on Exemption 6 or 7. The FBI's response prevents any meaningful analysis of whether, or to what extent, the laws cited indeed support the *Glomar* response as to any particular record. Instead, it indicates that the FBI simply decided that it did not want to search for responsive records that do not merit a *Glomar* response. This violates the letter and spirit of the FOIA. And again, further evidence of the FBI's failure to evaluate the request in good faith is its refusal to timely decide the ACLJ's administrative appeal of the broad *Glomar* response within the time limit imposed by the Statute. ACLJ SOF #2; FBI SOF #5.

## III.     THE FOIA AND THE FBI'S MISTAKEN RELIANCE ON (B)(7)(E)

The FBI contends that "because the existence or non-existence of the requested law enforcement records relating to the alleged nonpublic investigation at issue would disclose law enforcement techniques and procedures, the *Glomar* response was proper under Exemption 7(E)." FBI's MSJ, Dkt. # 18-1, 7]. It asserts that "[t]he Seidel Declaration establishes that confirming or denying the existence of law enforcement records relating to Christine Fang and Eric Swalwell would disclose techniques and procedures for law enforcement investigations." FBI SOF #14 (citing Seidel Decl. ¶¶ 49, 50).

For reasons already identified above, and which are incorporated by reference here, the FBI did not evaluate the requests in good faith. This is demonstrated by the fact that records responsive to the ACLJ's requests exist that are not records of, and that would not disclose, techniques and procedures for law enforcement investigations, within the proper meaning of those terms under the law. ACLJ SOF #22.  The requests themselves clearly go beyond that. For example, an email from former Director Robert Mueller or James Comey to a colleague about the news coverage of Rep. Swalwell would not encompass the (7)(E) concern. Neither would an email about Rep. Swalwell that has nothing to do with the Fang investigation. ACLJ SOF #18-19.  The FBI would have the Court accept that *every* FBI record about or naming a U.S. Representative who sits on the House Intelligence Committee, or a known Chinese national intelligence operative, would disclose techniques and procedures for law enforcement to that extent that even the existence of just one such record is exempt, even if the record had nothing to do with the Fang investigation.  This stretches the *Glomar* response jurisprudence to the point on unrecognizability and thwarts the letter and spirit of the FOIA.

Like Humpty Dumpty, [7]  the FBI attempted to "interpret" the ACLJ's FOIA requests into a box the FBI felt it could label with "*Glomar*."  *See* Seidel Decl. ¶ 5;  Def. MSJ, Dkt # 18-1, 13 ("As an initial matter, the FBI acted reasonably in interpreting the request as one for investigative records relating to the allegations of an intelligence operation involving Christine Fang and Eric Swalwell."). But in its attempt, it fundamentally and unlawfully altered the ACLJ's requests and violated the FOIA.

## CONCLUSION

In sum, the records the ACLJ seeks are broader than the FBI's unreasonable interpretation of the ACLJ's requests. The FBI's evaluation of the ACLJ's requests lack good faith.  The weight the FBI purports to give to the privacy interests of a Chinese national spy and a U.S. Representative who has publicly admitted being contacted by the FBI is improper, and the public interest in disclosure of the existence of records is high.  The ACLJ does not seek the types of records the FBI improperly construed the whole of the ACLJ's requests to seek, *i.e.*, properly classified records, records legitimately protected by the National Security Act, personnel or medical records, records compiled for law enforcement purposes, or records of law enforcement investigative techniques and procedures. And the ACLJ's FOIA requests clearly go far beyond those categories. Other agencies did not respond with the lazy, sloppy FBI-style *Glomar* response to essentially identical FOIA requests – including the ODNI, the head of the U.S. Intelligence Community.  The FBI's *Glomar* response, along with its refusal to timely decide the ACLJ's administrative appeal, and its interpretation of the ACLJ's FOIA requests, all show the FBI's evaluation of the ACLJ's

---

[7] "'When I use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less.' 'The question is,' said Alice, 'whether you can make words mean so many different things.' 'The question is,' said Humpty Dumpty, 'which is to be master — that's all." Lewis Carroll, Through the Looking Glass (London, Macmillan & Co. 1872).

FOIA requests was made in bad faith. The ACLJ urges this Court to reject the FBI's *Glomar* response and order it to proceed in the normal course as required by the FOIA.


Dated: October 19, 2021.                              Respectfully submitted,

                                                       THE AMERICAN CENTER FOR LAW AND JUSTICE

                                                       JAY ALAN SEKULOW
                                                         (D.C. Bar No. 496335)
                                                         *COUNSEL OF RECORD*
                                                       JORDAN SEKULOW
                                                         (D.C. Bar No. 991680)
                                                       STUART J. ROTH
                                                         (D.C. Bar No. 475937)

                                                       /s/ *Benjamin P. Sisney*
                                                       BENJAMIN P. SISNEY
                                                         (D.C. Bar. No. 1044721)
                                                       201 Maryland Avenue, N.E.
                                                       Washington, D.C.  20002
                                                       Telephone: (202) 546-8890
                                                       Facsimile: (202) 546-9309
                                                       Email: bsisney@aclj.org
                                                       *Counsel for Plaintiff*